UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GENERATION CHANGERS CHURCH, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| CHURCH MUTUAL INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) ) |

No.: _____

JURY DEMAND

## CLASS ACTION COMPLAINT WITH JURY DEMAND

COMES NOW the Plaintiff, Generation Changers Church ("Plaintiff"), individually and on behalf of all others similarly situated, and for its Class Action Complaint against Church Mutual Insurance Company ("Church Mutual" or "Defendant") states and alleges the following:

### PARTIES, RESIDENCY, JURISDICTION AND VENUE

1. Plaintiff, Generation Changers Church, is a Tennessee nonprofit corporation with its principal place of business (a house of worship) located at 224 Stewarts Ferry Pike, Nashville, Tennessee.

2. Defendant, Church Mutual Insurance Company, is an insurance company domiciled in the State of Wisconsin and headquartered at 3000 Schuster Lane, Merrill, Wisconsin. Defendant is authorized to sell property insurance policies in the states of Arizona, California, Illinois, Kentucky, Mississippi, Ohio, Tennessee, Texas, and Vermont.

3. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2). There are more than 100 members in the proposed class, at least one member of the

proposed class has state citizenship that is different than Defendant's, and the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

4. This Court has personal jurisdiction over Defendant because it has availed itself of the privilege of conducting business and issuing insurance contracts covering structures in the State of Tennessee.

5. Venue is proper in this forum pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in the Middle District of Tennessee, Nashville Division. Venue is also proper pursuant to 28 U.S.C. §1391(c) because Defendant is a corporation deemed to reside in this District.

## FACTS

**A. The Property Insurance Policy and Casualty Loss**

6. Defendant is a national insurer that sells property insurance coverage for, *inter alia*, structures and buildings across the United States, specifically including Arizona, California, Illinois, Kentucky, Mississippi, Ohio, Tennessee, Texas, and Vermont.

7. This lawsuit only concerns property coverage for buildings, and not personal contents, such as furniture and clothes.

8. Defendant's property insurance forms sold in Arizona, California, Illinois, Kentucky, Mississippi, Ohio, Tennessee, Texas, and Vermont are materially identical as it relates to the contractual dispute set forth herein.

9. The laws in Arizona, California, Illinois, Kentucky, Mississippi, Ohio, Tennessee, Texas, and Vermont are materially identical as it relates to the contractual dispute set forth herein, or at the least, any differences would be manageable in the class context. *See Steinberg v. Nationwide Mutual Insurance Co.*, 224 F.R.D. 67, 76 (E.D.N.Y. 2004) (involving a 46-state

putative class claiming breach of standard form insurance contracts). Specifically, these states are all "replacement cost less depreciation" states for purposes of determining actual cash value under property insurance policies or preclude the depreciation of labor by court decision or state administrative agency.

10. Plaintiff was insured pursuant to an insurance contract whereby Defendant agreed to insure, *inter alia,* Plaintiff's church building(s) located at 224 Stewarts Ferry Pike, Nashville, Tennessee and 6100 Leeville Pike, Lebanon, Tennessee (collectively the "Insured Property") against property damage, bearing Policy No. 0303445-02-019639 (the "Policy").

11. Plaintiff paid Defendant premiums in exchange for insurance coverage. The required premiums were paid at all times relevant to this Complaint.

12. The Policy provided insurance coverage for direct physical loss to the buildings located on the Insured Property, except as specifically excluded or limited by the Policy.

13. On March 3, 2020, a tornado damaged the structures located on the Insured Property.

14. Plaintiff timely notified Defendant of its loss and made a claim against the Policy.

15. Defendant determined the loss to the Insured Property was covered by the terms of the Policy.

16. Defendant calculates its actual cash value ("ACV") payment obligations to its policyholders for structural damage loss by first estimating the cost to repair or replace the damage with new materials (replacement cost value, or "RCV"), and then Defendant subtracts the estimated depreciation.

17. The Policy, and the other property forms that are the subject of this lawsuit, do not permit the withholding of labor as depreciation as described below. In contrast with the Policy,

3

certain policies of insurance expressly allow for the depreciation of "labor" as described herein. The type of form or endorsement will be referred to herein as a "labor depreciation permissive form." The Policy does not contain a labor depreciation permissive form.

**B. Defendant's Calculation of the Plaintiff's ACV Payments**

18. In adjusting Plaintiff's claim, Defendant affirmatively and unilaterally chose to use a "replacement cost less depreciation" methodology to calculate the loss and make its ACV payments.

19. After the March 3, 2020 loss, Defendant sent an adjuster to inspect the damage to the Insured Property and estimate the ACV associated with the loss. Defendant uses commercially-available computer software to estimate RCV, depreciation, and ACV. The software used by Defendant to calculate the payment to Plaintiff is called Xactimate®.

20. As set forth in a written Xactimate® estimate dated April 9, 2020 provided to Plaintiff by Defendant, Defendant's adjuster determined that Plaintiff had suffered a covered loss to the Insured Property. The estimate included the cost of materials and labor required to complete the scope of repairs included in the April 9, 2020 estimate. A copy of the April 9, 2020 Xactimate® estimate given to Plaintiff is attached as **Exhibit A**.

21. In calculating its ACV payment obligations to Plaintiff, Defendant subtracted from the RCV estimate the $5,000.00 deductible provided for in the Policy plus an additional amount for depreciation. Defendant then issued an ACV payment to Plaintiff consistent with its estimate.

22. In the fall of 2020, Defendant updated its estimate of the loss and provided Plaintiff with a second written Xactimate® estimate, this one dated September 30, 2020. In the September 30, 2020 estimate, Defendant again determined that Plaintiff had suffered a covered loss to the Insured Property but increased its determination of the RCV of Plaintiff's loss. The estimate

4

included the cost of materials and labor required to complete the scope of repairs included in the September 30, 2020 estimate. A copy of the September 30, 2020 Xactimate® estimate given to Plaintiff is attached as **Exhibit B**.

23. In calculating its ACV payment obligations to Plaintiff, Defendant subtracted from the September 30, 2020 RCV estimate the $5,000.00 deductible provided for in the Policy plus an additional amount for depreciation.

24. In October 2020, Defendant made an additional ACV payment to Plaintiff consistent with the September 30, 2020 estimate, with credit for the amounts previously paid associated with the April 9, 2020 estimate.

25. Plaintiff was underpaid on its ACV claim as more fully described below.

### C. Defendant's Practice Of Withholding Labor As Depreciation

26. When it calculated the ACV benefits owed to Plaintiff pursuant to the Policy, Defendant withheld costs for both materials and the labor required to repair or replace the Insured Property as depreciation, even though labor does not depreciate in value over time. Defendant withheld labor costs throughout its ACV calculations as depreciation. Defendant also withheld labor costs as depreciation for other work necessary to repair and replace Plaintiff's property.

27. Like all property insurance claims estimating software, the specific commercial claims estimating software used by Defendant allows for the depreciation of materials only or the depreciation of both material and labor in its depreciation option setting preferences.

28. In this pleading, whenever reference is made to withholding "labor" as depreciation, "labor" means intangible non-materials, specifically including both the labor costs and the laborers' equipment costs and contractors/laborers' overhead and profit necessary to

5

restore property to its condition immediately prior to the loss, as well as removal costs to remove damaged property, under commercial claims estimating software.

29. Defendant's withholding of labor costs as depreciation associated with the repair or replacement of Plaintiff's property resulted in Plaintiff receiving payment for its losses in an amount less than it was entitled to receive under the Policy. Defendant breached its obligations under the Policy by improperly withholding the cost of labor as depreciation.

30. Plaintiff itself cannot determine the precise amount of labor that has been withheld based only upon the written estimates provided. To determine the precise amount of labor withheld, it is necessary to have access to the commercial property estimating program at issue, as well as the electronic file associated with its estimates.

31. While an insurer may lawfully depreciate material costs when calculating the amount of an ACV payment owed to an insured, it may not lawfully withhold repair labor as depreciation under the Defendant's policy forms at issue in Arizona, California, Illinois, Kentucky, Mississippi, Ohio, Tennessee, Texas, and Vermont. Defendant's failure to pay the full cost of the labor necessary to return the Insured Property back to its pre-loss condition left Plaintiff under-indemnified and underpaid for their loss.

32. Defendant materially breached its duty to indemnify Plaintiff by withholding labor costs associated with repairing or replacing Plaintiff's property in its ACV payments as depreciation, thereby paying Plaintiff less than it was entitled to receive under the terms of the Policy.

**AMOUNT IN CONTROVERSY**

33. Upon information and belief, the amount in controversy with respect to the proposed class exceeds $5,000,000, exclusive of interest and costs.

## CLASS ACTION ALLEGATIONS

34. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff bring this lawsuit as a class action on behalf of itself and on behalf of all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. Only to the extent it is a requirement under applicable law, the proposed class herein is ascertainable.

35. The proposed class that Plaintiff seeks to represent is tentatively defined as follows:

> All Defendant's policyholders (or their lawful assignees) who made: (1) a structural damage claim for property located in Arizona, California, Illinois, Kentucky, Mississippi, Ohio, Tennessee, Texas, and Vermont; and (2) which resulted in an actual cash value payment during the class period from which non-material depreciation was withheld from the policyholder; or which should have resulted in an actual cash value payment but for the withholding of non-material depreciation causing the loss to drop below the applicable deductible, for the maximum limitations period as may be allowed by law.
>
> In this definition, "non-material depreciation" means application of either the "depreciate removal," "depreciate non-material" and/or "depreciate O&P" option settings within Xactimate® software or similar depreciation option settings in competing commercial software programs.
>
> The class excludes any claims for which the applicable limits of insurance have been exhausted by initial actual cash value payments.
>
> The class also excludes any claims arising under labor depreciation permissive policy forms, *i.e.*, those forms and endorsements expressly permitting the "depreciation" of "labor" within the text of the policy form, unless the use of those forms violate the law of the respective states at issue.

36. Plaintiff reserves the right to amend the definition of the proposed class through discovery. The following persons are expressly excluded from the class: (1) Defendant and its

7

subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; and (3) the Court to which this case is assigned and its staff.

37. Plaintiff and members of the putative class as defined all have Article III standing as all such persons and entities, at least initially, received lower claim payments than permitted under the policy. Certain amounts initially withheld as labor may be later repaid to some policyholders with replacement cost provisions in their policies, if any. However, policyholders who have been subsequently repaid for initially withheld labor still have incurred damages, at the least, in the form of the lost "time value" of money during the period of withholding, *i.e.*, statutory prejudgment interest on the amounts improperly withheld, for the time period of withholding.

38. The members of the proposed class are so numerous that joinder of all members is impracticable. Plaintiff reasonably believes that hundreds or thousands of people geographically dispersed across Arizona, California, Illinois, Kentucky, Mississippi, Ohio, Tennessee, Texas, and Vermont have been damaged by Defendant's actions. The names and addresses of the members of the proposed class are readily identifiable through records maintained by Defendant or from information readily available to Defendant.

39. The relatively small amounts of damage suffered by most members of the proposed class make filing separate lawsuits by individual members economically impracticable.

40. Defendant has acted on grounds generally applicable to the proposed class in that Defendant has routinely withheld labor costs as described herein in its adjustment of property damage claims under its policies of insurance. It is reasonable to expect that Defendant will continue to withhold labor to reduce the amount it pays to its insureds under these policies absent this lawsuit.

41. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

   a. Whether Defendant's policy language allows it to withhold labor costs in its calculation of ACV payments;

   b. Whether Defendant's policy language is ambiguous;

   c. Whether Defendant's withholding of labor costs in its calculation of ACV payments breaches the insurance policies;

   d. Whether Defendant has a custom and practice of withholding labor costs in its calculation of ACV payments;

   e. Whether Plaintiff and members of the proposed class have been damaged as a result of Defendant's withholding of labor costs in its calculation of ACV payments; and

   f. Whether Plaintiff and members of the proposed class are entitled to a declaration, as well as potential supplemental relief, under the Declaratory Judgment Act.

42. Plaintiff's claim is typical of the claims of the proposed class members, as they are all similarly affected by Defendant's custom and practice concerning the withholding of labor. Further, Plaintiff's claims are typical of the claims of the proposed class members because their claims arose from the same practices and course of conduct that give rise to the claims of the members of the proposed class and are based on the same factual and legal theories. Plaintiff is not different in any material respect from any other member of the proposed class.

43. Plaintiff and its counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiff's interests do not conflict with the interests of the proposed class they seek to represent. Plaintiff has retained lawyers who are competent and experienced in class action and insurance litigation. Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the members of the proposed class and

will diligently discharge those duties by vigorously seeking the maximum possible recovery for the proposed class while recognizing the risks associated with litigation. Plaintiff reserves the right to have unnamed class members join them in seeking to be a class representative.

44. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joining all proposed members of the proposed class in one action is impracticable and prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Individual litigation could result in inconsistent adjudications of common issues of law and fact.

45. In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of Plaintiff and members of the proposed class. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

46. Questions of law or fact common to Plaintiff and members of the proposed class, including those identified above, predominate over questions affecting only individual members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously,

efficiently, and without the necessary duplication of effort and expense that numerous individuals would require. Further, the monetary amount due to many individual members of the proposed class is likely to be relatively small, and the burden and expense of individual litigation would make it difficult or impossible for individual members of the proposed class to seek and obtain relief. On the other hand, a class action will serve important public interests by permitting consumers harmed by Defendant's unlawful practices to effectively pursue recovery of the sums owed to them, and by deterring further unlawful conduct. The public interest in protecting the rights of consumers favors disposition of the controversy in the class action form.

47. Class certification is further warranted because Defendant has acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

48. Plaintiff may seek, in the alternative, certification of issues classes.

49. Rule 23(c)(4) provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

## COUNT I
## BREACH OF CONTRACT

50. Plaintiff restates and incorporates by reference all preceding allegations.

51. Defendant entered into policies of insurance with Plaintiff and members of the proposed class. These insurance policies govern the relationship between Defendant and Plaintiff, and members of the proposed class, as well as the manner in which claims for covered losses are handled.

52. The policies of insurance between Defendant, Plaintiff, and the other members of the proposed class are binding contracts under Arizona, California, Illinois, Kentucky, Mississippi,

Ohio, Tennessee, Texas, and Vermont law, supported by valid consideration in the form of premium payments in exchange for insurance coverage.

53. Defendant drafted the insurance policies at issue, which are essentially identical in all respects material to this litigation concerning the withholding of labor as depreciation from ACV payments for structural loss.

54. In order to receive or be eligible to receive ACV claim payments in the first instance, Plaintiff and the putative class members complied with all material provisions and performed all of their respective duties with regard to their insurance policy.

55. Defendant breached its contractual duty to pay Plaintiff and members of the proposed class the ACV of their claims by unlawfully withholding labor costs as described herein.

56. Defendant's actions in breaching its contractual obligations to Plaintiff and members of the proposed class benefitted and continue to benefit Defendant. Likewise, Defendant's actions damaged and continue to damage Plaintiffs and members of the proposed class.

57. Defendant's actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiff and members of the proposed class.

58. In light of the foregoing, Plaintiff and members of the proposed class are entitled to recover damages sufficient to make them whole for all amounts Defendant unlawfully withheld from their ACV payments, including prejudgment interest as may be allowed by law.

## COUNT II
## DECLARATORY JUDGMENT AND RELIEF

59. Plaintiff restates and incorporates by reference all preceding allegations.

60. This Court is empowered by the Declaratory Judgment Act as codified at 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 to declare the rights and legal relations of parties regardless of whether further relief is or could be claimed.

61. A party may seek to have insurance contracts, before or after a breach, construed to obtain a declaration of rights, status, and other legal relations thereunder adjudicated.

62. Plaintiff and members of the proposed class have all complied with all relevant conditions precedent in their contracts.

63. Plaintiff seeks, individually and on behalf of the proposed class, a declaration that Defendant's property insurance contracts prohibit the withholding of labor costs as described herein when adjusting losses under the methodology employed herein.

64. Plaintiff further seeks, individually and on behalf of the proposed class, any and all other relief available under the law arising out of a favorable declaration.

65. Plaintiff and members of the proposed class have and will continue to suffer injuries.

## JURY DEMAND

66. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully request that this Court:

1. Enter an order certifying this action as a class action, appointing Plaintiff as the representatives of the class, and appointing Plaintiff's attorneys as counsel for the class;

2. Enter a declaratory judgment, declaring that Defendant's withholding of labor costs as depreciation is contrary to and breaches the insurance policy issued to Plaintiff and members of the class;

3. Enter a declaration, and any preliminary and permanent injunction and equitable relief against Defendant and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the policies, practices, customs, and usages complained of herein, as may be allowed by law;

4. Enter an order that Defendant specifically perform and carry out policies, practices, and programs that remediate and eradicate the effects of its past and present practices complained of herein;

5. Award compensatory damages for all sums withheld as labor costs under the policy, plus prejudgment interest on all such sums, to Plaintiff and members of the proposed class;

6. Award costs, expenses, and disbursements incurred herein by Plaintiff and members of the proposed class as may be allowed by law, including but not limited to amounts available under the common fund doctrine;

7. Pre- and Post-Judgment interest; and

8. Grant such further and additional relief as the Court deems necessary and proper.

Respectfully submitted,

/s/ J. Brandon McWherter_____
J. BRANDON McWHERTER
(TN Bar #21600)
**McWHERTER SCOTT & BOBBITT, PLC**
341 Cool Springs Blvd., Suite 230
Franklin, TN  37067
(615) 354-1144
brandon@msb.law

ERIK D. PETERSON (KY Bar 93003)*
**Mehr, Fairbanks & Peterson**
 **Trial Lawyers, PLLC**
201 West Short Street, Suite 800
Lexington, Kentucky 40507
Telephone:  859-225-3731
 Facsimile:  859-225-3830
Email:   edp@austinmehr.com

**\*to be admitted** *pro hac vice*

*Attorneys for Plaintiff and Putative Class Representative*

15